United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAYPAL, INC.,

        Plaintiff,

    v.

PAYPAY, INC., *et al.*,

        Defendants.
_____/

No. C-09-4494 EMC

**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**(Docket No. 26)**

    Plaintiff PayPal, Inc. has moved for a default judgment against Defendants PayPay, Inc. (a Delaware corporation) and WorldClearing U.S. LLC (a Delaware limited liability company).[1] Having considered the briefs and supporting documents submitted, as well as all other evidence of record, the Court hereby recommends that PayPal's motion be **GRANTED**.

### I.    FACTUAL & PROCEDURAL BACKGROUND

    PayPal initiated this lawsuit against multiple defendants, including PayPay and WorldClearing in September 2009. *See* Docket No. 1 (complaint). In its complaint, PayPal asserts six causes of action: (1) trademark infringement, *see* 15 U.S.C. § 1114; (2) false designation of origin and trade name infringement, *see* 15 U.S.C. § 1125(a); (3) federal trademark dilution, *see* 15 U.S.C. § 1125(c); (4) injury to business reputation and dilution under California law, *see* Cal. Bus. & Prof. Code § 14247; (5) common law passing off and unfair competition; and (6) statutory unfair

---

[1] In its complaint, PayPal sued not only WorldClearing U.S. LLC but also WorldClearing Holding, Inc. PayPal seeks a default judgment, however, against only the former and not the latter.

1  competition under California law. *See* Cal. Bus. & Prof. Code § 17200. The allegations underlying
2  the above claims are as follows, as further detailed in PayPal's complaint.

3  PayPal is an online payment processing service company. *See* Compl. ¶ 12. Since it was
4  founded in 1998, PayPal users have opened more than 150 million accounts, and many major online
5  retailers accept PayPal as a method of payment alongside Visa, American Express, and MasterCard.
6  *See id.* ¶¶ 12, 15. Since 1999, PayPal has continuously, prominently, and conspicuously used the
7  mark PayPal in connection with its services. *See id.* ¶ 13. PayPal owns multiple federal
8  registrations for the PayPal word mark. *See id.* ¶ 19. In addition, PayPal owns a federal registration
9  for a PayPal stylized mark and has applied for federal registration of a second PayPal stylized mark
10 (*i.e.*, a mark consisting of a double "P"). *See id.* ¶¶ 22, 25.

11 PayPay operates a banking and financial transaction processing business. *See id.* ¶ 35. In
12 essence, PayPay functions just like PayPal does: "[I]t allows individuals and businesses with an
13 email address and a bank account to open a PayPay account, fund this account from their own bank
14 account(s), and then make or receive payments, and send and receive money, all either online or
15 over mobile funds." *Id.* ¶ 37; *see also id.* ¶ 46 (describing how PayPay's services are identical to
16 those offered by PayPal). PayPay was incorporated in the United States in 2008 – *i.e.*, well after
17 PayPal established itself. *See id.* ¶ 31. PayPay uses marks that are substantially similar to PayPal's.
18 *See id.* ¶¶ 40-42.

19 WorldClearing holds and manages the U.S.-based financial assets of PayPay. *See id.* ¶ 33.
20 PayPay account holders in the United States wishing to put funds into their PayPay accounts are
21 specifically instructed to set up payment to WorldClearing. *See id.* ¶ 32.

22 As noted above, PayPal initiated this lawsuit against PayPay and WorldClearing based on the
23 latter companies' use of marks virtually identical to PayPal's. *See* Docket No. 1 (complaint). After
24 both companies failed to respond to the complaint, PayPal moved for entry of default. The Clerk of
25 the Court entered both Defendants' default in March 2010. *See* Docket No. 24 (notice); Docket No.
26 29 (amended notice). Thereafter, PayPal filed the currently pending motion for default judgment.
27
28

## II. DISCUSSION

A.   Service of Process

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

Under Federal Rule of Civil Procedure 4(h), a corporation or other similar entity may be served by personally "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive services of process." Fed. R. Civ. P. 4(h)(1)(B). In the instant case, PayPal has provided evidence showing that there was personal delivery on both PayPay and WorldClearing through an agent authorized by appointment. *See* Docket No. 6 (proof of service on PayPay); Docket No. 7 (proof of service on WorldClearing). The Court therefore concludes that service of process was appropriate.

B.   *Eitel* Analysis

After entry of default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the general rule is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). *But see* Fed. R. Civ. P. 55(b)(2) (providing that a court may conduct hearings when, to enter or effectuate a judgment by default, it needs to establish the truth of any allegation by evidence).

The majority of the above factors weighs in favor of default judgment. For example, if the motion for default judgment were to be denied, then PayPal would likely be without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Notably, PayPal sent cease-and-desist letters to PayPay prior to initiating this lawsuit, but to no avail. *See* Ghajar Decl. ¶ 4.

In addition, because neither PayPay nor WorldClearing has filed an answer to PayPal's complaint, there is little to suggest that there is a possibility of a dispute concerning material facts. The material facts appear to be undisputed. Furthermore, it is unlikely that the defendants' default was due to excusable neglect, especially when PayPal served not only the summons and complaint but also the request for entry of default and motion for default judgment on both companies but still received no response. *See* Docket Nos. 21, 26 (proofs of service). The Court also notes that, based on evidence submitted by PayPal, it appears that the principals of both PayPay and WorldClearing are aware of this litigation, *see id.* ¶¶ 4, 6, but neither the companies nor the principals have indicated any intent to defend the action. *See id.* ¶ 7.

The only factors deserving of additional analysis are the second and third factors, which basically "require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *Pepsico*, 238 F. Supp. 2d at 1175. As noted above, PayPal has asserted multiple claims in its complaint: (1) trademark infringement, *see* 15 U.S.C. § 1114; (2) false designation of origin and trade name infringement, *see* 15 U.S.C. § 1125(a); (3) federal trademark dilution, *see* 15 U.S.C. § 1125(c); (4) injury to business reputation and dilution under California law, *see* Cal. Bus. & Prof. Code § 14247; (5) common law passing off and unfair competition; and (6) statutory unfair competition under California law. *See* Cal. Bus. & Prof. Code § 17200. However, the Court need not evaluate each claim separately because each of the claims essentially turns on whether there will be a likelihood of confusion. *See M2 Software, Inc. v. Madacy Entm't Corp.*, 421 F.3d 1073, 1080 & n.5 (9th Cir.

1  2005) (noting that "[t]he test of trademark infringement under state, federal, and common law is
2  whether there will be a likelihood of confusion" and that, "for [the plaintiff] to succeed on each of its
3  other federal, state, and common-law based claims [*e.g.*, false designation and description of origin,
4  federal and state trademark dilution, and unfair competition], it must establish a likelihood of
5  confusion").

6  In the Ninth Circuit, likelihood of confusion between the parties' allegedly related goods or
7  services is analyzed using an eight-factor test:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of
> the marks; (4) evidence of actual confusion; (5) marketing channels
> used; (6) type of goods and the degree of care likely to be exercised by
> the purchaser; (7) defendant's intent in selecting the mark; and (8)
> likelihood of expansion of the product lines.

11  *Id.* In the instant case, these factors, addressed briefly below, largely weigh in favor of there being a
12  likelihood of confusion.

### 1. Strength of the Mark

14  "Trademark law offers greater protection to marks that are strong, i.e., distinctive. The
15  strength of a mark is determined by its placement on a continuum of marks from generic, afforded
16  no protection; through descriptive or suggestive, given moderate protection; to arbitrary or fanciful
17  awarded maximum protection." *One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1164 (9th
18  Cir. 2009) (internal quotation marks omitted).

19  In the instant case, the PayPal name and stylized marks are more suggestive than fanciful
20  (*i.e.*, a friend who helps in paying). But because the marks have largely been registered (registration
21  for one of the stylized marks has been sought), there is a presumption of distinctiveness. *See*
22  *Americana Trading, Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992) (noting that
23  "'[r]egistered trademarks are presumed to be distinctive and should be afforded the utmost
24  protection'"). Moreover, PayPal has included allegations in its complaint indicating that its marks
25  have achieved secondary meaning in the marketplace. *See* Compl. ¶¶ 12-18, 30; *Rudolph Int'l, Inc.*
26  *v. Realys, Inc.*, 482 F.3d 1195, 1197-98 (9th Cir. 2007) (stating that "[d]escriptive terms generally
27  do not enjoy trademark protection but may be protected if they acquire secondary meaning in the
28  minds of consumers, i.e., [they] become distinctive of the trademark applicant's goods in

commerce") (internal quotation marks omitted). Finally, there is nothing to suggest that "[s]imilar marks permeate the marketplace," *One Indus., LLC*, 578 F.3d at 1164, and therefore PayPal's marks are deserving of a fair amount of protection.

### 2. Proximity of the Goods or Services

The proximity factor involves whether the parties' goods or services are related. "Where goods [or services] are related or complementary, the danger of consumer confusion is heightened." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992).

In the instant case, PayPal has alleged that PayPay functions just as PayPal does: "[I]t allows individuals and businesses with an email address and a bank account to open a PayPay account, fund this account from their own bank account(s), and then make or receive payments, and send and receive money, all either online or over mobile funds." *Id.* ¶ 37; *see also id.* ¶ 46 (describing how PayPay's services are identical to those offered by PayPal). The PayPay website and other PayPay-affiliated websites also reflect such. *See* Cady Decl. ¶ 13 & Exs. E-H (websites).

### 3. Similarity of the Marks

Clearly, the more similar the parties' marks, the greater the likelihood of confusion. Here, there are both name marks and stylized marks at issue.

With respect to the name marks, there can be no dispute that they are virtually identical. There is only a one-letter difference between the two name marks, and notably PayPay, like PayPal, uses a second capitalized "P." As for the parties' stylized marks, there are also substantial similarities, from the typeface used, to the use of two-toned coloring and the use of the double "P" as a logo. Notably, PayPay has implicitly acknowledged the similarities between its marks and PayPal's as evidenced by a disclaimer that was used at one point on its website. *See* Compl., Ex. H (website) (stating that "PayPay is not related to and has no affiliation with PayPal").

### 4. Marketing Channels Used

Where the parties' goods or services are marketed – *e.g.*, advertised and sold – in the same channels, the likelihood of confusion is greater. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 990 (9th Cir. 1995); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir. 1979).

In the instant case, both parties appear to use the Internet as one marketing channel, *see* Compl. ¶ 14; Cady Decl. ¶ 13 & Exs. E-H (websites), and the Ninth Circuit has noted that "'[t]he Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since . . . it allows for competing marks to be encountered at the same time, on the same screen.'" *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007).

### 5. Defendant's Intent in Selecting the Mark

"'Bad intent' is not necessary to a finding that a likelihood of confusion exists." *Joujou Designs, Inc. v. Jojo Ligne Int'l, Inc.*, 821 F. Supp. 1347, 1355 (N.D. Cal. 1992). But where the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354.

In the instant case, PayPal has included allegations in its complaint indicating that its marks were well known by the time that PayPay incorporated in the United States in 2008. *See, e.g.*, Compl. ¶¶ 15-18 (alleging that PayPal users have opened more than 150 million accounts, that many top online retailers accept PayPal as a method of payment, and that PayPal has received numerous awards). Therefore, the likelihood that PayPay and/or WorldClearing was unaware of the PayPal marks is small. *See Joujou*, 821 F. Supp. at 1355 (rejecting defendant's contention that he was unaware of plaintiff's mark because defendant claimed to be a participant in the same market, plaintiff's mark had been extensively advertised, and plaintiff did substantial business). Moreover, knowledge on the part of Defendants may be inferred based simply on the substantial similarity between the name and stylized marks. *See id.* (noting that "[d]efendant's choice of the name JOJO coupled with the similarity of the script used, the placement of his mark, and the general french 'sound and feel' of his company's name raise a strong inference that defendant was attempting to trade off of JOUJOU's mark, thus enhancing the marketability of his products"). Notably, even PayPay's tagline – "Pay and Get Paid Safe and Easy" – imitates PayPal's (*i.e.*, "The Safer Easier Way to Pay").

6. Evidence of Actual Confusion

Actual confusion is not required to find a likelihood of confusion, particularly because of the difficulty in garnering evidence of actual confusion. *See Sleekcraft*, 599 F.2d at 352-53. But "[e]vidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Id.* at 352.

In the instant case, PayPal argues that there is evidence of actual confusion based on (1) PayPal's receipt at its Luxembourg office of mail intended to be delivered to PayPay (PayPay established an office in Luxembourg directly next door to PayPal's Luxembourg office), *see* Compl. ¶¶ 50-51; (2) the public warning issued by the Luxembourg government to consumers that PayPal and PayPay are not affiliated; and (3) the confusion expressed by one of PayPal's business partners as to why the Luxembourg government had issued a public warning about PayPal. *See* Cady Decl. ¶ 14 & Exs. J-K (warnings). The fact that the postal service in Luxembourg confused PayPal and PayPay is not the kind of consumer confusion with which courts are concerned. The concern is with confusion in the marketplace. That being said, that confusion together with the public warning issued by the Luxembourg government directed at consumers and the actual confusion of one of PayPal's business partners is evidence suggestive of actual confusion in the marketplace.

7. Type of Goods, the Degree of Care Likely to Be Exercised by the Purchaser, and the Likelihood of Expansion of the Product/Service Lines

These remaining factors have not been addressed by PayPal in any of their papers.

8. Summary

In sum, the eight-factor test on the likelihood of confusion indicates that, in the instant case, the PayPay name and stylized marks are likely to be confused with the protected PayPal name and stylized marks. Accordingly, PayPal has adequately stated a claim for relief with respect to the second and third *Eitel* factors, and, taking into account the other *Eitel* factors discussed above, the Court concludes that a default judgment against both PayPay and WorldClearing is appropriate.

In so concluding, the Court emphasizes that it is proper to extend liability for use of the PayPay marks to not only PayPay but also WorldClearing, both on a theory of indirect infringement as well as a theory of direct infringement. With respect to indirect infringement, there can be

8

1  contributory infringement or vicarious infringement.  The former is established by "proof that a
2  defendant '(1) has knowledge of a third party's infringing activity, and (2) induces, causes, or
3  materially contributes to the infringing conduct.'"  *Dream Games of Ariz., Inc. v. PC Onsite*, 561
4  F.3d 983, 995 (9th Cir. 2009).  The latter "requires proof that 'that the defendant exercises the
5  requisite control over the direct infringer and that the defendant derives a direct financial benefit
6  from the direct infringement.'"  *Id.*  In the instant case, PayPal has made allegations supporting both
7  contributory and vicarious infringement on the part of WorldClearing.  It has alleged that
8  WorldClearing holds and manages the U.S.-based financial assets of PayPay and that PayPay
9  account holders in the United States wishing to put funds into their PayPay accounts are specifically
10 instructed to set up payment to WorldClearing.  *See* Compl. ¶¶ 32-33.  As for direct infringement by
11 WorldClearing, that theory is also supported, this time by evidence submitted by PayPal in
12 conjunction with the motion for default judgment.  More specifically, PayPal has offered evidence
13 showing that the website www.paypay.com is registered to WorldClearing.  *See* Cady Decl. ¶ 13 &
14 Ex. F (registration).  Therefore, there is direct infringing use of the PayPal mark by WorldClearing.

C. <u>Relief</u>

16 Because default judgment is warranted, the Court must determine what relief is appropriate.
17 In the instant case, PayPal has asked for injunctive relief and an award of attorney's fees.

 1. <u>Injunctive Relief</u>

19 The injunctive relief requested by PayPal is detailed in its proposed order, dated June 30,
20 2010.  *See* Docket No. 33 (proposed order).  With one exception, the injunctive relief requested by
21 PayPal is appropriate given the finding of, *inter alia*, infringement herein.

22 The one exception is item (4) of the proposed order, which states: "In the event Defendants
23 fail to disable and transfer any of the domains listed in Paragraph 3 above [*i.e.*, www.pappay.com,
24 www.paypayinc.com, and www.pappay.info] to Plaintiff within seven (7) days after the entry and
25 service on Defendants of this Order, it is ordered that the registrars of record for these domain names
26 . . . immediately transfer them to PayPal or a registrar of PayPal's choice – whether or not
27 Defendants have authorized the transfer."  Docket No. 33 (Prop. Order at 4).  Having considered the
28 supplemental brief provided by PayPal, the Court concludes that the most appropriate way to

9

proceed – given that the registrars at issue are not parties to this lawsuit – is to provide for an injunction "authorizing the registrar[s] to transfer the domain names to [PayPal] upon [PayPal's] request, but . . . not enjoin[ing] the registrar[s] to do so upon pain of contempt." *Ringcentral, Inc. v. Quimby*, No. C 09-2693 RS, 2010 U.S. Dist. LEXIS 34554, at *2 (N.D. Cal. Apr. 8, 2010).

Accordingly, the Court recommends that item (4) be modified as follows: "In the event Defendants fail to disable and transfer any of the domains listed in Paragraph 3 above to Plaintiff within seven (7) days after the entry and service on Defendants of this Order, the registrars of record for these domain names (currently, 0007Names, Inc. for paypay.com and paypay.info; GoDaddy.com, Inc. for paypayinc.com) are hereby authorized to transfer these domain names to Plaintiff and to allow Plaintiff to transfer the domain names to the registrar of Plaintiff's choice, at Plaintiff's request and upon being provided a copy of this order, whether or not Defendants have authorized the transfer." *See id.* at *4 (providing for an injunction with similar language).

2.   <u>Attorney's Fees</u>

Finally, PayPal asks that it be awarded its attorney's fees. Because the Court has concluded that default judgment is appropriate with respect to, *inter alia*, the federal trademark claims, attorney's fees are an available remedy, that is, so long as this case can be characterized as "exceptional." *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). The Ninth Circuit has held that, where infringement is willful, the case qualifies as exceptional.[2] *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1219 (9th Cir. 2003) (stating that "[t]he total picture in this case is one of deliberate, willful infringement, and the district court did not err in awarding Earthquake its attorney's fees").

---

[2] In its papers, PayPal also argues that a case is exceptional where a defendant has defaulted or otherwise failed to appear. Those courts that have held such tend to rely on the case *Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*, 175 F.R.D. 658 (S.D. Cal. 1997). *Taylor Made* in turn relied on *Lien v. Compusoft of Kalamazoo, Inc.*, No. 1:89-CV-104, 1991 U.S. Dist. LEXIS 3218 (W.D. Mich. Mar. 13, 1991), for its holding. The problem is that, in *Lien*, the court actually found the case "exceptional" not solely on the basis of the defendant's disregard of the judicial process but also because of the willful behavior on the defendant's part. *See id.* at *13-14. The court referred to the defendant's complete disregard of the plaintiff's trademark rights and the string of broken promises during five months of negotiation, which "essentially invited [the] plaintiff to institute [the] action." *Id.*

The Court is troubled by PayPal's suggestion that mere *conclusory* allegations of willfulness in a complaint are adequate to establish entitlement to attorney's fees. The Court, however, agrees that, nevertheless, there is in the instant case sufficient evidence of willful infringement as discussed *supra*. Accordingly, the Court recommends that PayPal be awarded attorney's fees in an amount to be determined after PayPal submits a motion for such fees.

### III.   RECOMMENDATION

For the foregoing reasons, the Court recommends that PayPal's motion for default judgment be granted and that PayPal be awarded the injunctive relief described in PayPal's proposed order, except for item (4) which has been modified above. *See* Docket No. 33 (proposed order). In addition, the Court recommends that PayPal be awarded attorney's fees, with the amount to be determined after PayPal has submitted evidence substantiating the fees sought (*e.g.*, billing records).

PayPal is ordered to serve a copy of this report and recommendation on Defendants within a week of the date of this order. In addition, within a week of the date of this order, PayPal is ordered to file a revised proposed order incorporating the modified injunctive relief provision discussed above.

Any party may file objections to this report and recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: July 27, 2010

EDWARD M. CHEN
United States Magistrate Judge